IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

BRETT W. B.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 4:19-cv-04248-SLD-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 14), the Commissioner's Motion for Summary Affirmance (Doc. 15), and the Plaintiff's Reply (Doc. 16). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Plaintiff Brett W. B. filed his Title II claim for disability insurance benefits on March 29, 2013, alleging disability beginning on October 1, 2009. His claim was denied initially and upon reconsideration, and he thereafter filed a request for hearing concerning his DIB application. A video hearing was held on April 16, 2015 before the Honorable David W. Thompson (ALJ). Brett was represented by an attorney and both Brett and a vocational expert (VE) testified. The ALJ issued

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Docs. 8, 9) on the docket.

1

an unfavorable decision in June 2015. After the Appeals Council (AC) found Brett could not return to past work but could perform a significant number of jobs in the national economy such that he was not disabled, Brett filed a civil action in this Court in April 2017 seeking review of the Commissioner's decision. He argued that the ALJ's residual functional capacity (RFC) was not supported by substantial evidence and the ALJ failed to properly address his subjective testimony. This Court remanded because of the ALJ's misinterpretation of 2014 MRI results, his statement which equated Brett's daily activities with activities of full-time work, and his reliance upon insubstantial evidence to support his credibility finding.

Upon remand, the AC vacated the Commissioner's final decision and remanded the case to the same ALJ for further evaluation and proceedings consistent with this Court's September 2018 order. A second video hearing was held on June 18, 2019, and Brett was again represented by an attorney; Brett, Brett's wife Penny, and a VE testified. Following the second hearing, Brett's DIB claim was denied on August 12, 2019. Brett timely filed the instant civil action seeking review of the ALJ's August 2019 Decision on December 10, 2019.

## II

In April 2013, Brett claimed the following conditions limited his ability to work: chronic obstructive pulmonary disease (COPD); sciatica; foot growth; depression; anxiety with panic attacks; bone spurs; chronic back pain; and migraines. AR 273. At the first hearing[2], Brett testified regarding his previous receipt of worker's compensation in 2009 due to a hernia injury, in 2006 due to a back injury, and in 2004 or 2005 due to a right leg injury. The last time he collected unemployment benefits was in 2010. He attempted to go back to work in 2012. Brett testified that the 2012 job came to an end because it was physically too

---

[2] This summary of the testimony from Brett's first hearing in April 2015 is taken from this Court's September 2018 remand Opinion.

demanding. At that job, he was required to lift "[m]aybe 20 pounds at the most." AR 63.

Brett also testified about his medications and stated that he had been on narcotic pain medication on a daily basis since 2005 or 2006. He stated that his doctor was slowly weaning him off of Vicodin though he suggested, per his doctor, he might have to take narcotic pain medication the rest of his life. Brett testified that his medications helped "a little bit" and made him tired "sometimes." AR 65. Brett next testified he first treated with his family physician, Dr. Valarie Flacco-Nasselroad, M.D. (Dr. Flacco) since 2003 or 2004, last treated with her in January of 2015 (three months before the hearing), and saw her at least once every three months.

Brett estimated the last time he had an X-ray or MRI of his lower back was in 2012, but his attorney clarified that the last MRI of the lumbar spine done that was in the record was dated March 8, 2014. Brett guessed that the first X-ray or MRI of his lower back was done in 2002. Brett's attorney explained to the ALJ that the March 2014 MRI noted that it was compared to an MRI done in August 2009 and the findings in 2014 were "quite similar" to those seen on the previous 2009 exam. AR 70. The attorney also stated the 2009 MRI was not included. Brett testified that the diagnosis based upon the 2014 MRI was degenerative disc disease and he had "lots of problems associated with that[.]" AR 70. He explained he received physical therapy and electrical impulses for his low back but surgery was not recommended for it.

Upon questioning by his attorney, Brett testified that he experienced numbness in his left arm for a "couple years" and experienced limitations with its use. AR 77-78. He stated he could not lift as much with his left arm as with his right, and two of his left hand fingers and thumb were numb "generally most of the time[.]" AR 78. The questioning continued:

> Q. And how much can you lift with let's say both of your hands?
> 
> * * *
> 
> Q. At once?
> A. – pain wise, going, lifting –
> Q. Comfort level, how much can you lift comfortably?
> A. Ten pounds.
> Q. And with your left hand, how much can you lift approximately?
> A. Compared to my right hand?
> Q. Sure.
> A. Maybe seven at a comfort level.

AR 78.

The ALJ asked Brett follow up questions regarding the numbness in his left arm. Brett testified that the diagnosis for his left arm had "not been explored fully" and he believed his back was the cause of his arm issues. AR 82. He said the pain emanated from behind his shoulder blade. Brett's attorney interjected that there was an MRI of Brett's cervical spine which mentioned a disc bulge and possible C7 root radiculopathy, a November 2012 X-ray of Brett's cervical spine, and an X-ray of Brett's left shoulder in the record as well. Brett additionally testified that his left arm numbness and tingling were treated with medications "but nothing worked." AR 84. The ALJ proceeded:

> Q. Okay. Now there's nothing wrong with your right arm, correct?
> A. That's correct, Your Honor.
> Q. Now what's the maximum amount of weight you can lift with your right arm?
> A. Well, I tried to lift a couple gallons of gas in October, and turned the wrong way and ended up in the emergency room, Your Honor, so I don't know if I could give myself a fair – or you a fair estimate.
> Q. Well, you could tell us how much you could lift with your left arm, and that's the one that you have problems with? So I'm curious why you can't tell me how much you can lift with your right arm, the one you don't have any problems with?
> A. I just – okay, maybe 10, 15 pounds, Your Honor –
> Q. Okay. And what is it that limits your ability to lift with your right arm?

> A. Pain, Your Honor, back pain, testicular pain and pain in my feet, not to mention neck pain.

AR 84-85. Lastly, the VE was questioned.

At the second hearing in June 2019, Brett testified than since the 2015 hearing, his status "worsened . . . a lot." AR 665. His attorney noted an MRI showing nerve-root impingement and asked Brett whether his doctors ever discussed surgery with him. He answered: "It was discussed with INI, and they come [sic] to the conclusion that I would not be operable." *Id*. His attorney then cited a page in the record in which Brett's treating Dr. Flacco noted on November 29, 2016: "Neuropathic pain and leg pain and back pain and foot pain as well. Gabapentin no real help, and Lyrica helped a little bit, but no longer does anything for him. Had injections and PT and INI said not surgical would [sic] be chronic pain surgery [sic] would not help." AR 665-66 (citing AR 1084).

Brett stated that prior to December 2014, his back and feet were, in his opinion, what prevented him from doing even a simple sit-down job. He said he could only sit and stand for so long before it reached the point when he had "to give up and lay down." AR 666-67. In response to his attorney pointing out that Brett had very small earnings for Great Dane, LLC, Brett testified that he worked one day and tried to work because he "want[s] to be a productive part of the community and have my life. And I was just trying to do that." AR 668. He tried work at a later point and worked "[a]bout half a day." *Id*. Again, he stated limitations in sitting and standing prevented him from continuing to work at that time. Brett further testified that before December 2014 his typical day included waking up and trying to maintain his pain. He said his granddaughter lived with him and his wife at that time and helped "a lot." AR 670. He testified to the "little chores" he did around the house and described what he did to take care of his dog (fed it, let it out to get exercise). AR 673.

5

Upon questioning by the ALJ, Brett confirmed he diligently took his medications every day, had no new back injuries since the last hearing, and he went down to his friend's house "maybe" three or four times per week. AR 679. Brett's wife next testified. She and Brett had been married since 2002, she was a registered nurse, and she testified that Brett "probably" had "maybe" one good day per week. AR 681. Based on her observations, she characterized Brett's pain level as an eight or nine out of 10 in the morning and became "a little bit" better during the day with medication. AR 682. Upon questioning by Brett's attorney, Brett's wife testified that Brett had "maybe" four bad days in the week. AR 683. She said if Brett attempted chores around the house, depending upon the chore, "it will take him down for like three days after." AR 684. The VE was questioned last.

### III

In his August 2019 Decision, at Step Two, the ALJ found Brett had the following severe impairments: lumbar and cervical degenerative disc disease; COPD; arthrosis; peripheral neuropathy; migraine headaches; and depressive and anxiety disorders. AR 631. At that same step, the ALJ discussed treating Dr. Flacco's records which revealed Brett's complaints of neck, foot, and back pain, included a back pain diagnosis, and examination results which revealed no abnormalities except for neck and back pain with palpation. The ALJ also summarized consultative physical examining Dr. William Lopez's report wherein Dr. Lopez noted Brett's complaint of increased back pain with prolonged walking, bending, and twisting. Dr. Lopez's examination revealed normal limits except for some soreness with full range of motion of the lumbar spine and a normal neurological examination. The ALJ detailed that an MRI of Brett's lumbar spine was performed in March 2014 due to his complaints of low back pain. In his discussion of Brett's March 2014 lumbar spine MRI, the ALJ quoted the

radiologist's summarized finding of "multilevel degenerative disc disease with predominantly facet hypertrophy, most significant at L2-L3, L3-L4 and L5-S1" and the latter's note that the findings were similar in appearance to that seen on a previous MRI in 2009 with "perhaps mildly progressed in degree at the level of L5-S1." AR 633 (citing AR 583). The ALJ detailed additional treatment records from Dr. Flacco and her December 2014 Social Security General RFC Questionnaire. In that Questionnaire, Dr. Flacco opined Brett had a "fair" prognosis and provided that his symptoms would interfere to the point that he was "unable to maintain persistence and pace to engage in competitive employment." AR 634 (citing AR 542-49).

> The ALJ made the following RFC finding:
>
> [T]hrough the date last insured, the claimant had the [RFC] to perform light work as defined in 20 C.F.R. 404.1567(b) except he is limited to occasional climbing of ramps, stairs and ladders; no climbing of ropes and scaffolds and only occasional stooping, kneeling, crouching and crawling. Needs to avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, and unprotected heights. Limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, jobs that can be learned in 30 days or fewer, and jobs with multistep, self-evident tasks, easily resumed after momentary distraction. Limited to jobs that do not require more than occasional work-related interaction with the public, co-workers and supervisors.

AR 637-38. The ALJ "note[d] that the claimant has impairments that could reasonably be expected to cause pain and limitation. However, a claimant's subjective statements regarding his symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone." AR 638. The ALJ then cited 20 C.F.R. § 404.1529(c) and Social Security Ruling (SSR) 16-3p for the additional factors he was required to consider

in evaluating Brett's symptoms, including: the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms.

The ALJ listed Brett's daily activities, the medications he took, and the locations of the pain he alleged. Next, the ALJ cited medical records, including diagnostic test results (one of which was Brett's 2014 lumbar spine MRI) and Dr. Flacco's treatment records. The ALJ ultimately rejected Dr. Flacco's 2014 Questionnaire as "[t]here is no evidence of functional test results in the record to support the assessment by Dr. Flacco" and "the limitations indicated on the form are based upon the claimant's subjective statements and complaints and not examinations and objective findings." AR 642.

The ALJ next set forth the standard of review a federal court must apply to its review of an ALJ's decision, explained the standard of review is very deferential, and explained the court is precluded from "making independent credibility determinations" and substituting its judgment for the ALJ's. AR 643. The ALJ next found "some inconsistencies in [Brett's] testimony and his allegations" and noted that when seen by Dr. Lopez in June 2013, Brett reported he could lift and carry up to 40 pounds. The ALJ discussed Brett's receipt of unemployment benefits and found Brett's "subjective statements to the governmental agency dealing with unemployment benefits, and to the Social Security Administration are inconsistent." AR 644. The ALJ said he had the opportunity to observe Brett's general demeanor, voice intonations, expressions and reaction to questions and situations and, based upon those observations and the examples of inconsistencies he gave, found Brett's subjective statements

regarding his abilities and limitations not persuasive and not supported by the record as a whole.

The ALJ proceeded to provide authority for the statement that "[a]n administrative law judge is not required to believe the claimant or the claimant's witnesses." *Id*. He further emphasized that "appellate review of credibility determinations, especially when made by specialists such as the administrative law judges of the Social Security Administration, is entitled to 'special deference.'" *Id*. (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)). Continuing in that regard, the ALJ stated, "Credibility determinations cannot be reversed unless the plaintiff can show they are 'patently wrong.'" *Id*. (quoting *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)).

## IV

Brett argues: 1) the ALJ's RFC was not supported by substantial evidence; and 2) the ALJ failed to properly address Brett's subjective testimony.

## A

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind

might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

> 5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). In the instant case, Brett claims error on the ALJ's part at Step Four.

## B

### 1

In support of his contention that the ALJ's RFC finding was not supported by substantial evidence, Brett specifically challenges – again – the ALJ's consideration of the results of Brett's March 2014 lumbar spine MRI. He says the ALJ once again failed to acknowledge the severity of that MRI's findings and continued to gloss over the fact the MRI showed "desiccation at multiple levels and disc bulges and effacement and impingement" and "foraminal entrapment." AR 583-85. He insists the ALJ was left to interpret the results of his MRI and EMG[3] without any medical expert support. The Commissioner counters that the ALJ reasonably considered the March 2014 MRI where, among other things, the ALJ

---

[3] Insofar as Brett argues the ALJ impermissibly considered EMG results, that argument is waived. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("perfunctory and undeveloped arguments . . . are waived"). This is the extent of Brett's argument as to the EMG results: "While the ALJ acknowledges that the State agency doctors 'did not have access to the entire evidence of the testimony at the hearing' this means that he was left interpreting the results of Plaintiff's MRI and EMG without *any* medical expert support." (Doc. 14-1 at pg. 11) (emphasis in original). His RFC argument is otherwise limited to the 2014 lumbar MRI results. While he somewhat elaborated upon the EMG results in his Reply brief, that was too late to develop the argument.

did not interpret the 2014 MRI findings unilaterally or deviate from conclusions present in the medical record.

Certainly, the ALJ was required to rely on expert opinions instead of determining the significance of particular medical findings himself. *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). That it was what the ALJ did here. The ALJ did not merely recite those MRI findings and determine, based upon his own understanding of them, that those findings were insufficient to support a more limited RFC. First and foremost, Brett seems to believe that the 2014 lumbar MRI results were in and of themselves an expert's opinion as to the severity of his lumbar impairment. Rather than constituting an expert's opinion, the 2014 findings were akin to a diagnosis. "The existence of [] diagnoses and symptoms does not mean [an] ALJ [is] required to find that [the claimant] suffered disabling impairments." *Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007). The ALJ did not gloss over the 2014 MRI findings where he explicitly considered that Dr. Flacco noted Brett had "back pain – mri disc desiccation multiple levels and disc bulges and effacement and impingement in 2014" and cited clinical findings and objective signs including multilevel degenerative joint disease with predominant facet hypertrophy in support of her December 2014 assessment.

The ALJ found that Dr. Flacco's December 2014 assessment was internally inconsistent and not supported by the medical and other evidence of record; her office notes did not demonstrate any significant findings upon physical examinations, examinations did not demonstrate neurological deficits or weakness, and the primary abnormality noted was pain upon palpation of the neck or lumbar spine. The ALJ also pointed out that consulting Dr. Lopez also noted no significant abnormalities upon examination; specifically, Brett had full range of motion with reported soreness at end range, tenderness of the right lumbar spine but no spasms, negative straight leg raising, mild difficulty with

squatting and hopping on each leg, and full range of motion of all extremities. In other words, the ALJ did not simply determine the significance of the 2014 lumbar MRI results. He considered that evidence alongside other medical evidence and considered it through the lens of doctors' opinions following examinations of Brett (one of whom expressly cited to the 2014 MRI findings).[4] The ALJ also relied upon the State Agency doctors' review of evidence, giving their opinions "partial weight." AR 646. Brett has not convinced the Court that the ALJ impermissibly relied upon those State Agency opinions because the record they reviewed contained no imaging or evidence of Brett's nerve root impingement and foraminal entrapment. As the ALJ quoted, the 2014 lumbar MRI findings were similar in appearance to those seen on a previous MRI in 2009, "perhaps mildly progressed in degree," and the State Agency doctors considered evidence dated between 2009 and 2014. In fact, the State Agency doctors cited Brett's lumbar degenerative disc disease as evidence supportive of their conclusions regarding his exertional limitations and the reconsideration reviewing State Agency doctor rendered his opinion just a month before the March 2014 lumbar spine MRI. *Cf. Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (finding unsound the ALJ's "uncritical acceptance of the consulting physicians' conclusions" where they had not examined the plaintiff and, "most importantly," had not been shown the report of the first MRI done in 11 years which showed degeneration all along the cervical

---

[4] In his Motion for Summary Judgment, Brett does not challenge the weight the ALJ gave to the medical opinions of record. Also, while Brett believes the ALJ's consideration on remand of the 2014 MRI findings was still erroneous even though the ALJ removed the "unequivocal misstatement he made in the prior decision," the Court finds otherwise. In its September 2018 remand Opinion, this Court explained:
> The Court cannot ascertain whether the ALJ found consistency/inconsistency between the different medical opinions and the evidence of record based, at least in part, upon his misinterpretation of the 2014 MRI results. Indeed, he cited to other medical and other evidence of record to bolster his findings, but the question remains whether the ALJ viewed that evidence pertaining to Brett's back impairment through an incorrect lens.

AR 728. The ALJ remedied that error in his second Decision by removing, as Brett described it, the "grossly inaccurate" statement summarizing his 2014 MRI of his lumbar spine. *See* AR 727.

and lumbar spinal regions rather than degenerative disease in only one disc as show in the earlier MRI).

**2**

Unfortunately, the ALJ's second Decision again includes reversible error in his subjective symptom assessment.  On the one hand, the ALJ correctly explained that he was to consider whether Brett's subjective statements regarding his symptoms were consistent with the medical and other evidence of record.  AR 638.  He also correctly explained that he was to consider additional factors in evaluating the intensity, persistence, and limiting effects of Brett's symptoms.  *Id*.  However, later in his Decision, the ALJ found that Brett's subjective statements were not persuasive and were not supported by the record as a whole.  He based that finding on his observations of Brett during the hearing and the examples of inconsistencies given earlier in the Decision.  He said further, "In making this finding, the undersigned notes the following: . . . [M]aking judgments about who is telling the truth is a tricky business."  AR 644.  Brett makes several arguments as to the ALJ's evaluation of his subjective symptoms including that the ALJ made no mention of any of Plaintiff's or his wife's testimony at the second hearing, spent the majority of his decision attempting to justify the same flawed rationales as this Court previously identified, and included two paragraphs of boilerplate caselaw to support his assertion that he was in a better position to assess Brett's "credibility" than the Court – case law Brett he says is outdated.  In opposition, the Commissioner argues that the ALJ did as required by considering the longitudinal record to determine whether it was consistent with Brett's allegations, Brett was not prejudiced by the language of a claimant's "credibility" the ALJ included in his Decision, the ALJ reasonably considered Brett's daily activities, and Brett's receipt of unemployment benefits was a legitimate factor for the ALJ to consider.

The ALJ's comment – "making judgments about who is telling the truth is a tricky business" – is in direct contradiction to the Social Security Administration's clarification provided in SSR 16-3p (applicable on remand) that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p at *2. In fact, the ALJ's comment casts serious doubt that the ALJ correctly applied the relevant regulations and SSR 16-3p in his consideration of Brett's subjective symptom evaluation where SSR 16-3p states further:

> In evaluating an individual's symptoms, *our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation*. The focus of the evaluation of an individual's symptoms *should not be to determine whether he or she is a truthful person*.

SSR 16-3p at *11 (emphasis added). The Commissioner says if the Court remanded this case so the ALJ could remove the language that offends Brett, the result would be the same. Not so, as it appears the ALJ proceeded to determine whether Brett was a truthful person. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). The ALJ's reasons for rejecting Brett's subjective statements are telling that the ALJ improperly considered whether Brett was a truthful person. First, while it is appropriate for an ALJ to consider a claimant's daily activities, he "must explain perceived inconsistencies between a claimant's activities and the medical evidence." *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Here, the ALJ did nothing more than list the "variety of daily activities" Brett engaged in and assert that just because a claimant is able to do some daily activities does not equate to the ability to perform light work.

Second, the ALJ specifically commented that no surgeries had been recommended for Brett's impairment; notably, the ALJ made no mention of the

fact that during the second hearing, the failure to undergo surgery was explicitly addressed and Brett's counsel cited a record wherein a note was made that surgery would not help him. AR 665. Third, the ALJ found inconsistency between Brett's acceptance of unemployment benefits ("which means he holds himself out to the unemployment agency as being ready, willing and able to work, and that he was actively applying for work") and his allegations to SSA that he was disabled and incapable of working any job. AR 643-44. While the ALJ acknowledged "there are possible explanations for this," the ALJ reasoned that Brett offered none and it was not the ALJ's duty to speculate on possible valid reasons for holding oneself out as able to work to one governmental agency and unable to work to another. AR 644.

As Brett argues, the ALJ did not need to speculate as to reasons for the inconsistency – he could have simply asked Brett at the hearing. It is true that a claimant bears the burden of proof at the RFC stage of the disability evaluation, but it is also "a basic obligation of the ALJ to develop a full and fair record." *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). Further, the ALJ's statements negate any suggestion that his consideration of Brett's acceptance of unemployment benefits came, as the Commissioner himself says it must, with "significant care and circumspection." *See* Dft's MSA (Doc. 15-1 at pg. 7) (quoting *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014)). This is especially so where Brett actually testified about his attempted return to work in 2012, saying he worked only one day "[b]ecause . . . [he] couldn't do the job" and "honestly" thought he could not perform the duties of the job when he was hired. AR 668. His later attempt to work lasted "[a]bout half a day" and he said his limitations in sitting and standing prevented his from continuing to do that job. *Id*.

Fourth, the ALJ made absolutely no mention in his new Decision of Brett's wife's testimony. The ALJ commented to Brett's wife at the second hearing:

16

>    Q.   Now, I understand you're a registered nurse.
>    A.   Yes, I am.
>    Q.   So you have some good basic medical knowledge.
>    A.   Yes.
>    Q.   Okay. So your observations might seem more than mine.
>
>                              * * *
>
>    Q.   Based on your observations – you know, you're looking at him, and you've got some good background to have a better understanding than most. How would you characterize his pain levels from that observation?

AR 680-81. In response to the ALJ's question as to whether Brett had gotten better, worse, stayed the same, at periods got better then got worse, or then got better over the last four years, Brett's wife answered, "I would definitely describe it as continuing to get worse. He has a lot more bad days than good days." AR 681. Though the ALJ explained in his 2019 Decision that he considered the evidence submitted since Brett's 2015 hearing, he also emphasized that all that evidence "relates to the period after his date last insured of December 31, 2014." AR 635. The Commissioner therefore argues the Court should reject Brett's complaint that the ALJ did not consider the testimony obtained at the June 2019 hearing because Brett's condition at that hearing was not relevant to whether he was disabled as of December 2014. The Commissioner also argues that the Seventh Circuit Court of Appeals has held that an ALJ need not consider a spouse's testimony if it "corroborated" or was "redundant" of a claimant's own testimony. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). Nevertheless, the Court is left with the impression that the ALJ selected and discussed only that evidence which pertained to that which he believed he was tasked to consider - Brett's truthfulness. *See Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) ("Although a written evaluation of each piece of evidence or testimony is not required . . . neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion"). After

all, Brett's wife's testimony was consistent with Brett's statements as to his condition, albeit at a later time.

Finally, it troubles the Court that the ALJ persisted in his second Decision by relying, in part, upon Brett's "inconsistent" statements: he testified at his first hearing in response to his attorney's question that he could lift a total of 10 pounds with both arms and seven pounds with his left arm, and later in the hearing he admitted he could lift 10 to 15 pounds with his right arm. In its remand Opinion, this Court explained that Brett's answers were different because the questions were different such that the inconsistency the ALJ originally found was, at best, a "mere scintilla of evidence." AR 731. *See Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) (explaining that "A ruling that evidence was insufficient to support some finding is the type of ruling that establishes the law of the case" and the previous ruling must stand if there is no new evidence or if the new evidence does not undermine the previous ruling on sufficiency). Certainly, the ALJ attempted to bolster his subjective symptom evaluation with additional evidence on remand, but, as explained above, his evaluation again suffers from legal error that warrants remand once again.

Toward the end of his discussion of the evidence in support of the RFC assessment, the ALJ stated:

> Lastly, the undersigned notes that "credibility" is not a direct factor in determining disability. Just because an individual is unpersuasive (or lacks credibility), does not mean they are not, or cannot be disabled. What it does mean is that the claimant must rely more heavily on the objective medical records in the file to meet his or her burden of proof. The same is so for specific activities (such as activities of daily living) performed by the claimant. Just because an individual is able to do some dishes, or do some laundry, etc. does not equate to the ability to perform light work. However, the ability to perform certain activities of daily living may be considered as a factor when making the ultimate determination of disability.

18

AR 646. Throughout the ALJ's Decision, he correctly recited the applicable regulations and accurately summarized the constraints on a federal court's review of an ALJ's decision. But an accurate recitation of authority does not mean the Court must turn a blind eye to the ALJ's misapplication of that authority in a particular case.

### V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 14) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 15) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. § 405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on December 3, 2020.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE